IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| STEPHEN "COBEY" MONDEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:22-CV-004-Z-BR |
| | § | |
| CONSOLIDATED NUCLEAR | § | |
| SECURITY LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Disqualify and Brief in Support ("Motion") (ECF No. 29), filed on September 30, 2022. Having considered the Motion, briefing, and relevant law, the Court **GRANTS** the Motion.

**BACKGROUND**

This is a whistleblower suit filed by an employee terminated for timekeeping misconduct. Defendant operates the Pantex Plant, which assembles and disassembles nuclear weapons. Defendant employs Production Technicians ("PTs") as frontline workers. PTs are supervised by Production Section Managers ("PSMs"). Plaintiff worked at the Pantex Plant as both a PT and PSM. ECF No. 28 at 1. In October 2018, Defendant suspected PTs might be overcharging hours for time in which they did not work. *Id.* at 2. And in February 2019, Defendant reported the matter to the Department of Energy Inspector General's Office ("IG"). In August 2019, the IG interviewed Plaintiff. *Id.* Parties dispute what was said in the interview. Defendant asserts Plaintiff "admitted that he had allowed PTs to leave early and that he had instructed them to record more time than they had actually worked." *Id.* Plaintiff avers he never "admitted" he committed any wrongdoing. ECF No. 32 at 2. Plaintiff alleges he and other employees "provided to IG Special

Agents evidence of gross mismanagement, abuse of authority, and violations related to [Defendant's] federal contract." ECF No. 1 at 8. This evidence "included testimony relating to [Defendant's] fraudulent timekeeping practices, which occurred under [Defendant's] federal contract to manage and operate the Pantex Plant." *Id.* Defendant alleges "dozens of PTs" implicated Plaintiff as having allowed them (or even encouraged them) to cheat on their timekeeping. ECF No. 28. At 2. This alleged misconduct is what Defendant asserts led to Plaintiff's termination. *Id.*

Plaintiff filed this suit on January 11, 2022, labeling himself a "whistleblower" and alleging claims for: (1) violation of the National Defense Authorization Act of 2013, 41 U.S.C. § 4712; (2) implicit fraud under Texas common law; and (3) negligent misrepresentation. In August 2020, Plaintiff's counsel wrote to Defendant that they represented "more than 70" of Defendant's current and past employees. ECF No. 29 at 2. Approximately 50 of these employees are PTs subject to supervision by a PSM, such as Plaintiff. ECF No. 40 at 11. Defendant moved to disqualify Plaintiff's counsel ("Counsel") — arguing there is an unwaivable conflict because Counsel represents PTs adverse to Plaintiff "as the PTs have made unequivocal allegations of criminal, fraudulent conduct against" Plaintiff. ECF No. 29 at 3. Additionally, Defendant argues Counsel's representation is adverse to several of the PTs because Plaintiff similarly made allegations of criminal fraudulent conduct against them.[1] *See id.*; ECF No. 35 at 4–6.

---

[1] Defendant lists Thomas Friend as one of the individuals represented by Counsel. *See* ECF No. 29 at 2. But Friend is not represented by Counsel. ECF No. 40 at 2. However, it is undisputed that the following individuals at issue are represented by Plaintiff's counsel: Jeff Linley, Brian Tollis, Tim Nester, Gloria Berrera, Braxten Brattin, Charles Brown, Robert Lozano, Maria Cabello, and Chance Lermon. *See* ECF Nos. 35 at 4–6, 29-2 at 5.

**LEGAL STANDARD**

A motion to disqualify counsel is the proper method to call a court's attention to an alleged conflict of interest or other breaches of an attorney's ethical duties. *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). "Motions to disqualify are substantive in nature and are thus decided under federal law." *Id.* Courts consider both the applicable state code of professional conduct and the American Bar Association's ethical rules in analyzing the merits of a motion to disqualify. *Id.*

Under the American Bar Association's Model Rules of Professional Conduct ("Model Rules"), a lawyer may not concurrently represent two clients where either: (1) the representation of one client will be directly adverse to another client; or (2) "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Model Rule 1.7(a); *see also* Texas Disciplinary Rule of Professional Conduct 1.06(b). Where such a conflict exists, it is imputed to others in that lawyer's firm. Model Rule 1.10(a).

Notwithstanding the existence of a concurrent conflict of interest, a lawyer may represent a client if:

(1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) The representation is not prohibited by law;

(3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) Each affected client gives informed consent, confirmed in writing.

Model Rule 1.7(b). The rule of disqualification "is not applied mechanically" in the Fifth Circuit. *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995) (internal marks omitted). Among the factors considered are "whether the conflict has (1) the appearance of impropriety in

general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Id.* (quoting *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992)). "A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing." *Id.* Therefore, disqualification "is a sanction that must not be imposed cavalierly." *Id.*

ANALYSIS

### A. Plaintiff and the Identified PTs Are Potential Adverse Witnesses to Each Other

Defendant argues Counsel's representation constitutes an unwaivable conflict of interest because Counsel "represents multiple individuals who have pointed fingers at one another for fraudulent timekeeping." ECF No. 29 at 5. "As a result, [Plaintiff] would most certainly be a key witness in any of his PTs' civil or criminal prosecution for fraudulent timekeeping." ECF No. 44 at 3. For example, PTs Arnold Galbraith and Chance Lermon — both clients of Counsel — stated they entered false time at Plaintiff's direction. *Id.*; ECF No. 29-1 at ¶ 5. Likewise, Plaintiff identified Jeff Linley and Brian Tollis — other PTs represented by Counsel — as PTs who falsely reported their time. ECF Nos. 29 at 2; 29-1 at ¶ 4. Thus, having a client testify that another client violated the law — and vice-versa — "is simply an unwaivable, materially adverse conflict" as Counsel cannot provide capable representation to all clients. ECF No. 44 at 4.

Plaintiff and the PTs have stated facts that expressly implicate the other of committing violations of the federal False Claims Act ("FCA").[2] Plaintiff stresses that Galbraith did not think

---

[2] To establish a claim under the FCA, the Government needs to prove: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out or forfeit moneys due (i.e., that involved a claim). *U.S. ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 324 (5th Cir. 2017) (internal marks omitted). The FCA imposes civil liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States government; or

4

the PSMs (including Plaintiff) were doing anything wrong and was not accusing Plaintiff of "fraud" or a "crime." ECF No. 40 at 7. Similarly, Plaintiff argues Defendant has presented no evidence showing that Plaintiff knowingly made false representations about timekeeping practices to satisfy the elements of fraud under Texas law. *Id.* at 8. But these arguments miss the mark. Under the FCA, "knowing" means "that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and . . . require[s] no proof of specific intent to defraud." 31 U.S.C. § 3729(b).

For example, Plaintiff testified the PTs: (1) made false statements (*e.g.*, that they worked six hours when they had only worked four); (2) the statements were "knowingly" made (*e.g.*, the PTs knew they had only worked four hours but put down six); (3) the statements were material (because the statements formed the basis of the PTs' pay); and (4) the statements caused the government to pay PTs for time they did not work. Thus, Plaintiff would likely be a key witness in any of the PTs' civil or criminal prosecution for fraudulent timekeeping. Likewise, Galbraith and Lermon make accusations against Plaintiff that would subject him to civil and criminal penalties. *See, e.g.*, ECF No. 35-4 at 3. Therefore, Counsel's representation of Plaintiff and the PTs who have implicated each other for committing violations of the FCA creates "a significant risk" that Counsel's representation of Plaintiff will be materially limited. Model Rule 1.7(a).

Defendant's argument is further supported by the declaration of Autum Flores, outside counsel for Defendant. Flores states Plaintiff "identified Jeff Linley as a PT who intentionally took advantage of supervisors by making deals that allowed him to overstate his time." ECF No. 29-1

---

"knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim." *Id.* at 323–24 (citing 31 U.S.C. § 3729(a)(1)(A)–(B)).

at 3. Flores further names Galbraith and Lermon as PTs who identified Plaintiff as a PSM "who would allow PTs to leave early but record a full shift." *Id.* Plaintiff objects to Paragraphs 3, 4, and 5 as containing hearsay, lacking foundation, and being vague and conclusory. ECF No. 40 at 2. But as Defendant points out, the statements are not being used to prove Plaintiff allowed PTs to record time they did not work. ECF No. 44 at 8. Rather, the statements are being used to show the PTs are pointing their finger at Plaintiff and are thus adverse to Plaintiff. *Id.* The Court also agrees Plaintiff's other objections are meritless. *Id.* at 8–9.

Additionally, the Court cannot agree that the conflict of interest is "speculative." ECF No. 44. Plaintiff admits the testimony collected by the IG in its interviews with Plaintiff and other employees "has been used by the Department of Justice to pursue civil and criminal claims against [Defendant's] employees." ECF No. 1 at ¶ 24. Accordingly, the Court finds the conflict has "the appearance of impropriety in general." *Dresser*, 972 F.2d at 544. Similarly, the fact that Plaintiff "and the approximately 50 PTs will be forced to get separate counsel" is an insufficient societal interest to overcome the likelihood of public suspicion of the impropriety. ECF No. 40 at 11. It is always the case that separate counsel must be obtained in the event a lawyer is disqualified from representation. And in any case, Plaintiff already has separate counsel.

The conflict has also not been cured. To begin, Counsel has made no assurances to the Court that he "will be able to provide competent and diligent representation to each affected client." Model Rule 1.7(b)(1). Likewise, the conflict cannot be cured by Plaintiff's waiver alone. This is because the Model Rules require *each affected client* to give informed consent, confirmed in writing. *See* Model Rule 1.7(b)(4). But Counsel has only attached Plaintiff's waiver. *See* ECF No. 40-2. Thus, "[e]ven if these conflicts were waivable, it has not been properly waived, as there is no evidence in the record to suggest that [Counsel] properly obtained informed consent to join

6

representation despite the existence of a conflict, confirmed in writing, from each of its clients in this litigation." *Johnson v. Clark Gin Serv., Inc.*, No. 15- 3315; 2016 WL 7017267, at *13 (E.D. La. Dec. 1, 2016).

### B. Defendant Did Not Delay in Bringing the Motion

Plaintiff argues Defendant is attempting to delay or otherwise disadvantage and frustrate Plaintiff. ECF No. 40 at 5. This is because Defendant "knew the facts that form the basis of its motion to disqualify at the time [Plaintiff] filed his complaint in January 2022, but delayed in moving to disqualify [Counsel] for nearly nine months until September 30, 2022." *Id.* The Court disagrees. To begin, the February 2020 letter contained only 44 names, whereas the August 2020 letter stated Counsel represented "more than 70 current and past employees" of Defendant. *See* ECF No. 29-2 at 5, 8. Defendant alerted the Court in May 2022 as to potential conflict issues that were being investigated. *See* ECF No. 24 at 5. Defendant requested Counsel to confirm whether his firm represents any former employees of Defendant on May 13, October 6, twice on October 12, and October 13, 2022. ECF No. 44 at 6. Defendant finally responded on October 17 — only stating he does not represent Thomas Friend or Royce Randolph. ECF No. 44-1 at 2. To date, Counsel has not provided a full list of clients he currently represents in this case. Thus, the Court agrees that any delay in bringing the Motion was caused by Counsel.

In sum, the Court does not take this action lightly. The Court is sensitive to Plaintiff's right to his counsel of choice and Counsel's right to freely practice. But the Court simply cannot agree there "is no conflict of interest" between Plaintiff and PTs. ECF No. 40 at 2. The Court doubts that the conflicts of interest are curable. *See Johnson*, 2016 WL 7017267, at *11. And to the extent such conflicts are curable, they have not been cured here.

7

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion and hereby **DISQUALIFIES** and **PROHIBITS** Counsel from representing Plaintiff in this matter.

**SO ORDERED.**

November 4, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE